IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**JAMES GLEN**              *

   V.                     *           CIVIL NO. ELH-11-927

**LAW OFFICE OF W.C. FRENCH**   *

REPORT AND RECOMMENDATION

This matter comes before the Court upon motion by plaintiff James Glen for an entry of default judgment against defendant, The Law Offices of W.C. French, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for failure to appear, answer, or otherwise defend in this matter.  Plaintiff seeks statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692(k) for various alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.  Plaintiff also requests attorney's fees in the amount of $3,680 and costs in the amount of $75.  This case has been referred to the undersigned magistrate judge in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302.  No evidentiary hearing is necessary.  For the reasons set forth below, the undersigned recommends that the Court grant the motion in part and deny the motion in part.

    **A.   Default Judgment Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.

In deciding whether to grant a motion for default judgment, the Court must first consider the following three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct.  Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).  See also Smith v. Bounds, 813 F.2d 1299 (4th Cir. 1987) (relying on these factors in determining whether a default judgment merited reconsideration).

The Court must also determine whether plaintiff has alleged legitimate causes of action. In reviewing plaintiff's Motion for Entry of a Default Judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).  It, however, remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action.  Id.; see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the

facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81.  Unlike allegations of fact, the Court does not accept allegations regarding damages as true, but rather must make an independent determination regarding such allegations. E.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999).  In so doing, the Court may conduct an evidentiary hearing.  FED. R. CIV. P. 55(b)(2).  The Court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for the award.  See, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F.Supp. 2d 15, 17 (D.D.C. 2001) (finding that a court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

**B.   Preliminary Factors**

The Clerk of Court having filed entry of default, the undersigned concludes that the procedural requirements for entry

3

of default judgment have been met.  Moreover, because defendant has failed to file any responsive pleadings or otherwise show cause why default should not be granted, the Court is "not in a position to judge whether the defendant has a meritorious defense or whether any delay was the result of culpable misconduct."  Sambrick, 834 F.2d at 73.  Further, defendant's failure to appear deprived plaintiff of any other means of vindicating its claim and plaintiff will be prejudiced if default is not granted.

    **C.**    **Causes of Action**

Accepting the facts alleged in plaintiff's complaint as true, the undersigned finds that plaintiff has adequately alleged only the first of the three counts.

    **1. Count I: Violation of the FCDPA**

Plaintiff's first count alleges that defendant violated the FDCPA in several ways.  The FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability. Spencer, 81 F. Supp. 2d at 590-91.  As discussed below, plaintiff has adequately alleged only one FDCPA violation, but that is sufficient to establish a cause of action under the FDCPA.

First, plaintiff claims that defendant violated the FDCPA by including a statement in its initial collection letter (dated January 12, 2010) that "overshadowed" the statement of

plaintiff's rights that defendant was required to include in its letter pursuant to § 1692(g)(a)(3)&(4) of the FDCPA. (ECF No. 1, ¶ 9-10). Although it is not clearly pled, plaintiff appears to allege that the violation of § 1692(g)(a) in turn violated § 1692(e)&(f).[1] (Id. at 21).

Under § 1692(g)(a)(3)&(4), the collector must include the following statement in either its initial communication with the debtor or in a notice sent within five days of the initial communication:

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; and
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector . . . .

Section 1692(e) of the FDCPA in turn prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692(e)(10). The Fourth Circuit has held that in the context of the FDCPA, the language of debt

---

[1] As discussed below, the undersigned agrees that a violation of § 1692(a) amounts to a violation of § 1692(e)(10). However, the undersigned fails to see how § 1692(f) is implicated, and plaintiff's complaint provides no explanation.

5

collection letters alleged to be violative of the statute must be evaluated from the perspective of the "least sophisticated debtor." Nat'l Fin. Servs. Inc., 98 F.3d at 135-36. A collection letter "is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." Creighton v. Emporia Credit Serv., 1997 U.S. Dist. LEXIS 8556 (E.D. Va. May 20, 1997) (citing Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)).

Defendant's January 12, 2010 letter states plaintiff's rights as follows:

> "[I]f within 30 days of this notice you notify us preferably in writing of any dispute as to any part of this debt, we will cease collection efforts unless and until we send you written verification of it and will provide you the name and address of the original creditor, if different from the current creditor."

(ECF No. 1, ¶ 14).

It also states:

> "[N]otwithstanding the 30 days to notify us you dispute the debt, if you do not contact us on or before (7) days from the date of this letter, we shall assume you do not have any desire to settle this account and may recommend litigation[.]"

(Id. at ¶ 10).

In paragraphs 10-11 of the complaint, plaintiff suggests that the threat of litigation within 7 days contained in the latter statement overshadows plaintiff's rights under §

6

1692(g)(a)(3)&(4). The undersigned agrees. Plaintiff was entitled to 30 days to contact defendant before validity of the debt would be assumed; defendant's letter suggests that validity of the debt would be assumed within 7 days unless plaintiff affirmatively contacted defendant. An unsophisticated debtor would be confused as to how much time (s)he had to dispute the debt before defendant would initiate suit. C.f. Bartlett v. Heible, 128 F.3d 497, 501 (7th Cir. 1997) (concluding that a letter's threat to sue if debtor failed to pay within a week overshadowed debtors right to notice that he had 30 days to contest debt, reasoning that the debtor "might well wonder what good it would do him to dispute the debt if he can't stave off a law suit."); Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991)(threat of suit if payment not made within 10 days overshadowed debtors right to dispute debt within 30 days); Dunn v. McGavic, 653 F. Supp. 2d 1109, 1114 (D. Or. 2009)(holding that defendant's threat of immediate lawsuit overshadowed and contradicted debtor's right to 30 days to dispute the debt). Plaintiff was also entitled to notice that if he disputed the debt within 30 days, he would receive verification. Based on the complaint, it does not appear that defendant informed plaintiff of this right at all. Thus, defendant violated § 1692(g)(a)(3)&(4), and § 1692(e)(10) alike. Although that suffices to establish liability, and although the other claimed

7

violations of FDCPA are inadequately alleged, the undersigned addresses those other violations below.

Plaintiffs also claim that defendant violated the Maryland Collection Agency Licensing Act, Md. Code Ann., Bus. Reg., § 7-101, et seq. ("MCALA") by engaging in collection activity in Maryland without the proper collection license to do so. (See ECF No. 1, ¶ 6, 7, 20). It is true that such a violation of MCALA would in turn violate § 1692(e)(5) of the FDCPA. See Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 729-31 (D. Md. 2011). However, plaintiff has not clearly established that defendant did violate MCALA.

MCALA requires that "a person must have a license whenever the person does business as a collection agency in the State." Id. at § 7-301(a). A "collection agency" is a person who "engages directly or indirectly in the business of collecting for, or soliciting from another, a consumer claim[.]" Id. at § 7-101(c)(1). Plaintiffs allege that the "principal purpose of Defendant['s] business is the collection of debts and Defendant regularly attempts to collect debts alleged to be due another" (ECF No. 1, ¶ 7) and the undersigned accepts those facts as true.

However, MCALA does not apply to a lawyer collecting debt for a client, "unless the lawyer has an employee who: (i) is not a lawyer; and (ii) is engaged primarily to solicit debts for

collection or primarily makes contact with a debtor to collect or adjust a debt through a procedure identified with the operation of a collection agency[.]" Id. at § 7-102(9). Plaintiff's factual allegations are insufficient to show that § 7-102(9) does not apply. The relevant allegations are as follows. Plaintiff contacted the defendant on or about July 15, 2010 and spoke to a "collection agent" who identified himself as "Hajji Jannah" and proceeded to explain that W.C. French was an elderly attorney who did not come to the office anymore and "we run the operation of his office." (Id. at ¶ 17-18). Plaintiff does not claim that Mr. Jannah was not a lawyer. Based solely on those facts, it is not clear whether § 7-102(9) applies to bar liability under MCALA. Plaintiff does make the conclusory claim that "[t]he Defendant is required to be licensed as a collection agency pursuant to § 7-102(9) of [MCALA]." (ECF No. 1, ¶ 19). But because that is a legal (rather than factual) allegation, the Court is not obliged to accept the allegation as true under the applicable standard. Thus, it is not clear whether defendant violated FDCPA by violating MCALA.

Next, plaintiff claims that defendant violated the FDPCA by shortening the 30 day period by one day. Plaintiff was entitled to "thirty days after receipt of the notice" to dispute the debt. 15 U.S.C. § 1692(g)(a)(3) (emphasis added). But, according to plaintiff, defendant's letter required a response

9

within thirty days of the date of the notice. (ECF No. 1, ¶ 12-14).  If it were true that defendant actually used that language ("date of the notice"), it would constitute a violation of § 1692(g)(a)(3).  See, e.g., Rivera v. Amalgamated Debt Coll. Serv., 462 F. Supp. 2d 1223 (S.D. Fl. 2006) ("Defendant's replacement of [the language of § 1692(g)(a)(3)'s thirty day requirement] with a statement that debtors must challenge the debt within thirty days of the date of the notice . . . curtails debtors rights by reducing the number of days debtors have to dispute their debts.") (emphasis added); Cavallaro v. Law Office of Shapiro & Kreisman, 933 F. Supp. 1148 (E.D.N.Y. 1996) (notice that plaintiff should dispute "within thirty (30) days from the date of this notice" violated  § 1962(g)(a)(3)) (emphasis added).  But see Strojanovski v. Strobl & Manoogian, P.C., 783 F. Supp. 319, 323 (E.D. Mich. 1992) (construing exact same notice and holding that "such an insignificant variation from the statutory language" cannot constitute an abusive debt collection practice).  But defendant did *not* use that exact language.  Rather, the notice reads "if within 30 days of this notice . . . ." (ECF No. 1, ¶ 14). That ambiguous language could mean receipt of the notice or the date of the notice.  Thus, it is not a clear violation, as in the cases cited above.  Such an "insignificant variation from the statutory language" does not

constitute abusive debt collection practice. Stroganovski, 783 F. Supp. at 323.

Last, although not clearly pled, plaintiff appears to allege that defendant violated the FDCPA by informing plaintiff that it would not accept an oral dispute and that plaintiff needed to dispute the debt in writing. (ECF No. 1, ¶ 15-16). This argument fails. The following passage from Davis v. R & R Prof'l Recovery, 2009 U.S. Dist. LEXIS 11879, 15-17 (D. Md. Feb. 17, 2009) is instructive:

> Plaintiff argues that both [§ 1692g(a)(3) and § 1692e(10)] were violated because, during a telephone conversation Plaintiff initiated on October 2, 2007, Plaintiff was told by Defendant's representatives that she 'could not orally dispute [the] debt, [and] that [she] was required to put [the] dispute in writing.' . . .
>
> As Defendant accurately points out, **this Court has previously held that section 1692g(a)(3) does, in fact, contain an inherent writing requirement.** See Wallace v. Capital One Bank, 168 F. Supp. 2d 526, 529 (D. Md. 2001) (stating that this Court was "persuaded by the reasoning in Graziano v. Harrison, 950 F.2d 107, 111-12 (3d Cir. 1991), which holds that not requiring a debtor's dispute under § 1692g(a)(3) to be in writing would make the statutory scheme incoherent"). Therefore, assuming the conversation occurred as Plaintiff alleges, the FDCPA was still not violated.

The undersigned thus concludes that defendant violated FDCPA, but only by way of a threat to sue within 7 days.

### 2. Count II: Violation of the Maryland Consumer Debt Collection Act ("MCDCA")

In his second count, plaintiff alleges that defendant violated the Maryland Consumer Debt Collection Act, MD. Code Ann., Com. Law §§ 14-201 to 14-204 ("MCDCA") by "fail[ing] to obtain a MD license as a collection agency." (ECF No. 1, ¶ 23). This count was inadequately pled. The MCDCA provides that, in collecting a consumer debt, a collector may not "[c]laim, attempt, or threaten to enforce a right *with knowledge* that the right does not exist." Id. at § 14-202(8) (emphasis added). It may well be that defendant had no right to attempt collection without proper licensure. But plaintiff failed to allege that defendant did so with the requisite knowledge.

### 3. Count III: Violation of the MCPA

Last, plaintiff alleges that defendant "committed unfair or deceptive acts or practices within the meaning of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301 *et seq*. ("MCPA")]" (ECF No. 1, ¶ 25). Plaintiff does not provide even the slightest explanation of *how* the facts establish such a violation. The MCPA prohibits "unfair or deceptive trade practices" § 13-301, and expressly designates as "unfair or deceptive trade practices "those that constitute any violation of the MCDCA." Id. § 13-301(14)(iii); see also Bradshaw, 765 F. Supp. 2d at 732. Thus, plaintiff may believe that by violating

12

the MCDCA, defendant violated the MCPA as well. But plaintiff failed to say so. In any case, plaintiff failed to state a cause of action under the MCDCA.

### D. Damages

Plaintiff seeks $1,000 in statutory damages under the FCDCA. (ECF No. 6, 1). Having found that plaintiff's allegations of fact support default judgment in its favor on Count I, the undersigned recognizes that 15 U.S.C. § 1692(k)(a)(2)(A) permits plaintiff to recover statutory "damages as the court may allow, but not exceeding $1,000." In determining the amount of damages under § 1692(k)(a)(2)(A), the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional[.]" Id. § 1692(k)(b)(1). Because liability arises out of only one incident (the January 12, 2010 letter), and plaintiff has not broached the issue of defendant's "knowledge," the undersigned finds damages in the maximum amount of $1,000 excessive. Instead, defendant should be ordered to pay plaintiff $400 in statutory damages.

Plaintiff also claims costs in the amount of $75, and attorney's fees in the amount of $3,680.00. It is not clear under which statute plaintiff requests such amounts (FDCPA, CDCA, or MCPA). (See ECF No. 6, 1). However, because the only

adequately alleged violation was under FDCPA, the undersigned will apply the damages framework under that act.  Section 1692(k)(a)(3) provides that "in the case of any successful action to enforce the foregoing liability," courts may award "the costs of the action, together with a reasonable attorney's fee."  Having reviewed plaintiff's counsel's attorney fee affidavit (ECF No. 6-1), the undersigned recommends an award of $2,530.00 representing 9.2 hours at $275 an hour.  In his affidavit, counsel holds himself out as highly experienced in consumer matters, such as this one.  The Court takes judicial notice of his admission to the Maryland Bar in 1992 and his admission to this court in 2002, and accepts his statement that he has been awarded $400 an hour in similar cases by other judges on the district court.  However, the case is a very simple one, not requiring any high level of skill or in-depth knowledge of the applicable law.  Moreover, the time spent, while not excessive, appears generous as to certain tasks, e.g., ".3 [hour] letter to court at time of filing."  While the undersigned does not recommend a reduction in the number of hours, the undersigned does recommend an hourly rate of $275 (the low end of the range of presumptive hourly rate for attorneys at the bar for greater than 15 years, see Local Rules, App. B(3)(d)).  Thus, the undersigned recommends that the Court order defendant to pay the $2,530.00 in attorney's fees to

14

plaintiff. While the statute allows for an award of costs, plaintiff has provided no proof as to the $75 cost, and accordingly, no award of costs is recommended.

### 4. Conclusion

The undersigned finds that an entry of default judgment is appropriate as to Count I and recommends that judgment be entered against defendant in the total amount of $2,930.00, reflecting:

1. Statutory damages of $400.00; and
2. Attorney's fees of $2,530.00.

Date:  1/19/12                        /s/
                                      Susan K. Gauvey
                                      United States Magistrate Judge